Stathy SAUNDERS, Plaintiff,

v.

LUCY WEBB HAYNES–NATIONAL TRAINING SCHOOL FOR DEACONESSES AND MISSIONARIES a/k/a Sibley Memorial Hospital et al., Defendants.

No. 87–2267 (RCL).

United States District Court, District of Columbia.

Jan. 10, 1989.

**4**

Joseph A. Finlayson, Jr., Fort Washington, Md., for plaintiff.

Joseph Montedonico, Donahue, Ehrmantraut & Montedonico, Washington, D.C., for defendants Washington Neurological Associates, Inc., Bruce Ammerman, M.D., and Harvey Ammerman, M.D.

Gary W. Brown, Bromley, Brown & Walsh, Washington, D.C., for defendant Sibley Memorial Hosp.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This case comes before the court on defendants' motions for Rule 11 sanctions, plaintiff's oppositions thereto, and defendants' reply to plaintiff's opposition, this Court's September 30, 1988 order that an evidentiary hearing be held in this matter, plaintiff's counsel's memorandum in opposition to the motions for sanctions, and defendants' supplements to their motion for sanctions. An evidentiary hearing was held on November 2, 1988 on defendants' motions for sanctions, during which the court heard the oral testimony of George J. Mathews, M.D. and of plaintiff Stathy Saunders. On November 7, 1988, plaintiff voluntarily dismissed this case with prejudice at the pretrial conference held on that date. For the reasons set out below, defen-

dants' motions for sanctions will be granted and the defendants will be directed to file further information relating to the amount of the sanctions to be imposed.

■ It should be noted that the court addresses only defendants' motions for sanctions with regard to plaintiff's filing of her allegedly erroneous statement pursuant to Rule 26(b)(4) of the Federal Rules of Civil Procedure. In their motions for sanctions, defendants explicitly narrowed their requests for sanctions to the filing of that statement, and accordingly the hearing held in this matter on November 2, 1988 focused on the filing of that statement.[1] Defendants Bruce J. Ammerman, M.D., Harvey Ammerman, M.D. and the Washington Neurosurgical Associates have lodged with the Clerk of the Court two supplements to their motion for sanctions and the court will order the Clerk of the Court to let these supplements be filed on this date. Significantly, in the first of these supplements, received by the Clerk of the Court on November 15, 1988 (after the Court's evidentiary hearing), defendants appear to request that the court grant defendants Rule 11 sanctions for plaintiff's filing of the complaint in this lawsuit, which they appear to now allege to be frivolous. Since the first supplement was the first time that defendants raised the issue of whether plaintiff should be subject to sanctions for the filing of her complaint, we do not address that issue in this memorandum opinion, but address only whether plaintiff should be subject to Rule 11 sanctions for the filing of the allegedly erroneous 26(b)(4) statement.[2]

FACTS

Plaintiff's action for medical malpractice grows out of an operation performed on her allegedly authorized by defendant Washington Neurosurgical Associates and allegedly prescribed and performed by defendant Bruce Ammerman, M.D. with the assistance of defendant Harvey Ammerman, M.D. The operation was performed at the facilities of defendant Sibley Memorial Hospital. [Plaintiff's] Complaint For Medical Malpractice, Aug. 14, 1987, at 1–2. Following her treatment by defendants, plaintiff received follow-up care from George J. Mathews, M.D., to whom she had been referred by Mizra A.H. Biag, M.D., her family physician. Plaintiff filed her complaint in this case on August 14, 1987.

After a status conference and consultation with counsel for the parties, in a scheduling order of January 19, 1988, the court ordered that plaintiff file her statement designating medical experts pursuant to Rule 26(b)(4) of the Federal Rules of Civil Procedure on or before January 26, 1988, and that she so designate any other experts on or before February 15, 1988. In its scheduling order of March 29, 1988, the court further ordered that discovery, including responses, be complete on or before June 28, 1988, that a pretrial conference be held on November 7, 1988, and that trial be held on November 14, 1988.

On January 26, 1988, plaintiff's counsel filed with the Clerk of the Court a statement pursuant to Rule 26(b)(4) of the Federal Rules of Civil Procedure in which George J. Mathews, M.D. was designated as a witness which plaintiff planned to call at trial.[3] In that statement, plaintiff's

1. In their Motion For Sanctions And Other Appropriate Relief defendants Bruce J. Ammerman, M.D., Harvey Ammerman, M.D., and the Washington Neurosurgical Associates moved "that this court issue an Order finding that the plaintiff has violated Rule 11 in the filing of a 26(b)(4) Statement with the court...." [Defendants'] Motion For Sanctions And Other Appropriate Relief, August 5, 1988. The language of defendant Sibley Memorial Hospital's motion for sanctions is substantially the same.

2. Indeed, we do not believe that such a supplement is an appropriate manner in which to raise a new motion for sanctions under Rule 11

or to amend the original motion for sanctions. Moreover, we note on this point that Dr. Mathews testified at the hearing that Dr. Biag had said to him that "there could be a legal situation here." Transcript of Evidentiary Hearing Nov. 2, 1988, at 39. Accordingly, it appears that plaintiff and her counsel may have relied on statements made by Dr. Baig in filing her complaint.

3. In her 26(b)(4) statement, plaintiff also designated William A. Davis, M.D. to testify about "the cause and connection between the infectious disease developed after Plaintiff's first operation" and the operation itself. In a second

counsel stated that Dr. Mathews would testify to "the standard of care in the medical treatment rendered to Plaintiff by Defendants.... [that is] that Plaintiff suffered permanent and irreparable operational injuries as a result of the medical treatment rendered by Defendants.... [and] [t]hat in his experience, the defendants were negligent in their medical treatment of plaintiff's injuries." Significantly, however, when defendants' counsel attempted to contact Dr. Mathews in hopes of setting up a deposition date, Dr. Mathews was surprised and explained that he had never agreed to testify on behalf of plaintiff. Accordingly, on August 5, 1988, defendants Bruce Ammerman and Harvey Ammerman, and Washington Neurosurgical Associates moved to sanction plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure for the filing of plaintiff's erroneous 26(b)(4) statement, and defendant Sibley Memorial Hospital filed a similar motion on August 15, 1988. On November 2, 1988 this court held an evidentiary hearing on defendants' motions for sanctions. In its order of September 30, 1988, the court ordered that the parties at that hearing address the content of any communications had between plaintiff (or her counsel) and Dr. Mathews relating to the quality of the treatment plaintiff had received from defendants as well as to the possibility that Dr. Mathews would testify in this case on plaintiff's behalf.

Dr. Mathews testified at the hearing of November 2, 1988, that he had never commented negatively on the quality of the treatment plaintiff had received from defendants to either plaintiff or her counsel, and that he had never agreed to testify on her behalf in this case.[4] In her testimony at the hearing, plaintiff Stathy Saunders did not directly contradict the testimony of Dr. Mathews. In essence, she testified that she had never asked Dr. Mathews to testify on her behalf, and that Dr. Mathews never actually told her that he would testify; nor had Dr. Mathews ever explicitly said to her that he believed that defendants' treatment of her was defective, according to her testimony. She testified only that Dr. Mathews said that there may have been "problems" or "complications" with respect to the operation performed by defendants. According to her testimony, she had assumed that Dr. Mizra A.H. Baig, plaintiff's family physician who had referred her to Dr. Mathews, would arrange Dr. Mathew's testimony, although she gave no specific justification for this assumption. Dr. Mathews testified at the hearing that plaintiff, upon learning that he did not plan to testify on her behalf, told him that she had only *assumed* that he would testify on her behalf. The testimony of Dr. Mathews at the hearing was directly contradicted by the statement made by plaintiff's counsel in his closing argument. Plaintiff's counsel stated that Dr. Mathews had assured him that he would testify on plaintiff's behalf during a telephone conversation in January, 1987.[5] Aside from this one al-

---

26(b)(4) statement filed on February 16, 1988, plaintiff designated Mizra A.H. Baig, M.D. to testify that plaintiff's injuries resulted from her treatment by defendants; also in that second statement, she designated Howard R. Bloch, Ph. D. to testify about plaintiff's economic loss.

Plaintiff's counsel at the evidentiary hearing held on November 2, 1988 did not indicate that he had retained any medical experts as of that date. Moreover, Dr. Baig in his affidavit stated that, "I am not an expert witness for the plaintiff in [this case].... I have not signed [a] retainer agreement with plaintiff or her counsel, nor have I agreed to render standard of case testimony for plaintiff at any time." Affidavit of Mizra A.H. Baig, M.D., [Defendants'] Motion For Summary Judgment, Exhibit A, July 5, 1988.

**4.** In his affidavit, Dr. Mathews further stated that, "if called to testify I would state that Har-

vey Ammerman, M.D., and Bruce Ammerman, M.D. met the applicable standards of neurosurgical care at all times in their treatment of Stathy Saunders." Affidavit of George J. Mathews, M.D., [Defendants'] Motion For Sanctions And Other Appropriate Relief, Aug. 5, 1988, Exhibit B.

**5.** This statement was not under oath; plaintiff's counsel did not choose to testify at the hearing. Plaintiff's counsel later stated that he had only this one conversation with Dr. Mathews. *See* Transcript of Evidentiary Hearing, Nov. 2, 1988, at 88–89. In plaintiff's brief in opposition to defendant's motion for sanctions, plaintiff's counsel does not allege that he, personally, had any direct communication with Dr. Mathews except in July of 1988. [Plaintiff's] Opposition to Motion for Sanctions And Other Appropriate

leged conversation between Dr. Mathews and plaintiff's counsel, plaintiff's counsel in filing the 26(b)(4) statement designating Dr. Mathews appears to have relied entirely on his client's unjustified belief that Dr. Mathews would testify, and possibly on statements made by Dr. Baig.[6]

RULE 11

Is relevant part Rule 11 of the Federal Rules of Civil Procedure states that:

> The signature of an attorney ... constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper, that, to the best of the signer's knowledge, information and belief formed after *reasonable inquiry* it is well grounded in fact and is warranted by existing law ... and that it is not interposed for any improper purpose....
>
> ....
>
> If a pleading, motion or other paper is signed in violation of this rule, the Court ... shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis added).

■ Once a court determines that there has been a violation of Rule 11, the imposi-

tion of sanctions is mandatory, although the court retains wide discretion in determining the extent and nature of sanctions to be imposed. *See, e.g., Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1174–75 (D.C.Cir. 1985); *INVST Financial Group v. Chem-Nuclear Systems,* 815 F.2d 391 (6th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987).

■ Plaintiff's counsel filed the 26(b)(4) statement of January 26, 1988 in violation of Rule 11. Plaintiff's counsel in that statement represented that Dr. Mathews "will testify" on his client's behalf at trial. Clearly, however, plaintiff's counsel did not make a "reasonable inquiry" into whether or not Dr. Mathews would in fact testify. This court found Dr. Mathews to be a credible witness in testifying that he neither agreed to testify on behalf of the plaintiff nor gave plaintiff or her counsel reason to believe that he would testify, and we expressly credit Dr. Mathew's testimony.[7] His testimony is essentially consistent with the testimony of plaintiff herself. Plaintiff, moreover, has presented no evidence of any kind of a retainer agreement or fee arrangement with Dr. Mathews.

Even if we were to credit the statement of plaintiff's counsel that he was assured by Dr. Mathews that he would testify at trial during a telephone conversation in January, 1987[8], plaintiff would still be in violation of Rule 11. The standard a court

---

Relief, Memorandum of Points and Authorities, Aug. 28, 1988, at 2.

6. None of the parties called Dr. Baig to testify at the hearing held in this matter, although both plaintiff and her counsel appeared to indicate that they believed that Dr. Baig had some communications with Dr. Mathews about the case.

7. Plaintiff has not presented any convincing evidence impeaching Dr. Mathews. In plaintiff's brief filed in opposition to defendants' motion for sanctions, plaintiff's counsel alleged that Dr. Mathews changed his mind about testifying on behalf of plaintiff after having been engaged in "furtive communications" with counsel for defendants. [Plaintiff's] Opposition to Motion For Sanctions And Other Appropriate Relief, Memorandum of Points And Authorities, Aug. 28, 1988, at 2. Plaintiff never offered any evidence in support of this allegation. Moreover, although plaintiff and her counsel indicated at the hearing that they believed that Dr. Baig, plaintiff's family physician, may have been in com-

munication with Dr. Mathews about Dr. Mathews testifying at trial, plaintiff did not choose to produce Dr. Baig at the hearing and did not in any other way corroborate that version of events.

8. Dr. Mathews testified that any such conversation would be unusual for him and that he would remember had it occurred. He further testified that he would be especially likely to remember any discussions concerning his testifying in a medical malpractice case since he had testified only once in such a case 10 years ago.

In the opposition brief, plaintiff's counsel does not allege that he, personally, had any direct communication with Dr. Mathews concerning the doctor's testifying at trial except in July, 1988. [Plaintiff's] Opposition To Motion for Sanctions And Other Appropriate Relief, Memorandum Of Points And Authorities, Aug. 28, 1988, at 2.

should apply in determining whether there was "reasonable inquiry" for the purposes of Rule 11 is whether the actions in question were "reasonable under the circumstances." *Westmoreland*, 770 F.2d at 1177. Relying merely on the vague verbal assurances of a crucial medical expert in a medical malpractice case is not reasonable. At the time plaintiff's counsel filed the 26(b)(4) statement, he almost certainly had never discussed with Dr. Mathews even the substance of his prospective testimony (even though he purported to summarize it in the 26(b)(4) statement). Indeed, he did not even receive a copy of Dr. Mathew's "medical report" relating to his treatment of plaintiff until after June 20, 1988, if he ever received one. Plaintiff's Opposition to Defendants' Motion For Summary Judgment, Exhibit 3, Aug. 19, 1988. Even more significantly, plaintiff's counsel does not even contend that he entered into a retainer agreement or fee arrangement of any sort with Dr. Mathews. Plaintiff's counsel plainly made no real inquiry into Dr. Mathew's intent to testify, or even into what the content of his testimony may be, or on what terms he would agree to testify.[9] Plaintiff's counsel, therefore, filed his 26(b)(4) statement in violation of Rule 11, so that sanctions are mandatory.

SANCTIONS

Under Rule 11, sanctions may be imposed on a represented party, the person who signed the papers in question, or both. *See Westmoreland*, 770 F.2d at 1178–79 ("the district court is in the best position to judge the relative responsibility of counsel and client, and to apportion the sanction accordingly"). The selection of an appropriate sanction, moreover, is left to the discretion of the district court. *Westmoreland*, 770 F.2d at 1178. Rule 11 authorizes the district court to impose "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the plead-

ing, motion, or other paper, including a reasonable attorney's fee." Fed.R.Civ.P. 11.

 The court in this case shall impose a monetary sanction in the form of reasonable expenses associated with the filing of the unfounded 26(b)(4) statement. However, this monetary sanction shall be assessed solely against plaintiff's counsel, and not against plaintiff Stathy Saunders. This is not a case in which the represented party should share the responsibility for the Rule 11 violation. Plaintiff's counsel was responsible for preparing and filing the 26(b)(4) statement so that he is charged with making reasonable inquiry into its accuracy. There is no convincing evidence in the record before the court that plaintiff herself understood the nature of the statement or even knew that it was filed. Even if plaintiff's counsel relied on plaintiff's assurances that Dr. Mathews would testify on her behalf, it was counsel's responsibility to not only inquire into the basis of his client's belief that the doctor would testify, but also the contact the doctor himself. Plaintiff Stathy Saunders can fairly be charged with responsibility for fully understanding the problem only after being put on notice of the fact that she lacked a medical expert by the filing of the affidavits of Drs. Mathews and Baig on July 5, 1988. [Defendants'] Motion For Summary Judgment, Exhibits A and B, July 5, 1988.

In consideration of the foregoing as well as of the entire record herein, it hereby is

ORDERED, that the motion for sanctions by defendants Bruce J. Ammerman, M.D., Harvey Ammerman, M.D., and Washington Neurosurgical Associates is GRANTED, and it hereby further is

ORDERED, that the motion for sanctions by defendant Sibley Memorial Hospital is GRANTED, and it hereby further is

ORDERED, that defendants shall file with the Clerk of the Court the amount of reasonable expenses incurred because of

---

**9.** Two letters which plaintiff's counsel sent to Dr. Mathews on November 19, 1986 (plaintiff's exhibit 2) and January 13, 1987 (plaintiff's exhibit 1) do not show reasonable inquiry. In these letters, plaintiff's counsel requested information and records concerning Dr. Mathews' treatment of plaintiff. However, nowhere do these letters address the possibility of Dr. Mathews testifying at trial on plaintiff's behalf; even if they had, Dr. Mathews never responded.

the filing of the 26(b)(4) statement within 20 days of this order, and it hereby further is

ORDERED, that plaintiff's counsel shall, within 10 days thereafter, respond to the defendants' statements of reasonable expenses. Any reply by defendants shall be filed within 7 days thereafter.

SO ORDERED.