Ricardo DEL CANTO, Plaintiff,

v.

ITT SHERATON CORPORATION, et al., Defendant.

C.A. No. 92–2818(PLF).

United States District Court, District of Columbia.

Oct. 21, 1994.

Charles Cervantes, Washington, DC, for plaintiff.

Jeffrey Freund, Mady Gilson, and Virginia Seitz, Washington, DC, for defendant.

## MEMORANDUM OPINION

FRIEDMAN, District Judge.

This matter is before the Court on the Motion of the Defendants Hotel and Restaurant Employee Union Local 25 and its Executive Secretary–Treasurer, Ronald Richardson, for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Defendants argue that counsel for Plaintiff Ricardo del Canto violated Rule 11 in that he "failed to conduct an adequate pre-filing inquiry" before filing his complaint. Plaintiff responds that the 1993 amendments to Rule 11 apply in these circumstances and that Defendants failed to comply with the provisions of the rules as amended. Plaintiff also contends that he did conduct an adequate pre-filing inquiry before filing the complaint and that he had a sufficient basis to proceed at least through the discovery phase. Finally, invoking the Court's discretion under amended

Rule 11, Plaintiff suggests "voluntary remediation" as a deterrent rather than the imposition of sanctions.

The Court has granted Defendants' Motion for Summary Judgment, denied Plaintiff's Motion for Summary Judgment and entered judgment on all counts in favor of Defendants. Specifically, the Court concluded that Plaintiff had no cause of action under the Employee Polygraph Protection Act of 1988, 29 U.S.C. §§ 2001–2009, because the Union and Mr. Richardson were not "employers" or persons "acting directly or indirectly in the interests of an employer in relation to an employee or prospective employee," 29 U.S.C. § 2001(2). The Court also concluded that there was no evidence in the record whatsoever to support the second cause of action, for defamation, and, indeed, that Plaintiff's own deposition testimony wholly undermined that claim. Del Canto Deposition at 65–66. Finally, the Court concluded that if Plaintiff had no cause of action under the Employee Polygraph Protection Act or for common law defamation he could have no cause of action for conspiracy because conspiracy is not a separate tort in the District of Columbia. *Halberstam v. Welch,* 705 F.2d 472, 479 (D.C.Cir.1983).

■ At the hearing on the cross-motions for summary judgment, the Court advised counsel that although it was granting summary judgment for Defendants, it would not impose Rule 11 sanctions for the filing of the statutory claim, but reserved ruling on the sanctions question with respect to the other claims. Plaintiff's counsel argued, and the Court agreed, that Rule 11 can have a chilling effect and "that lawyers are between Scylla and Charybdis" in not knowing whether to "push the envelope" when there is a newly enacted statute or a burgeoning legal theory that presents itself. As Plaintiff's counsel pointed out, the Employee Polygraph Protection Act had been in force for only a few years when he filed the complaint in this case. While there had been only one deci-

sion interpreting the statute when counsel filed the complaint, he represented that he was unaware of that decision at the time.[1]

When he filed the complaint, counsel said that he was aware only of a state court decision, *Moniodis v. Cook,* 64 Md.App. 1, 494 A.2d 212, *cert. denied,* 304 Md. 631, 500 A.2d 649 (1985), holding that compensatory and sometimes punitive damages are available for violating an employee's rights under the Maryland state polygraph statute. On the basis of that decision and the then relatively new federal statute, it was not unreasonable for Plaintiff's counsel to conclude that there might be *some* basis for a lawsuit here, even though neither the Union nor Mr. Richardson was an "employer" within the meaning of the Act.[2]

■ The same cannot be said of the defamation claim. That claim is based on the allegation that Defendant Richardson had communicated with third parties about Plaintiff's suspension from his job and that those communications conveyed Mr. Richardson's belief that Plaintiff was a liar and, at least by implication, suggested that Plaintiff had stolen liquor from the hotel. Plaintiff has put forth only two pieces of evidence with respect to that claim. The first is a January 10, 1992, letter from Albert Hunt and the second is a two-line excerpt from Mr. Richardson's deposition. Neither the Hunt letter nor the lines referred to in the Richardson deposition, however, provide any basis for the allegation that Mr. Richardson conveyed his disbelief about Plaintiff's veracity and, by implication, his theft of liquor.

The Hunt letter was not a statement by Mr. Richardson, nor did it even refer to a statement made by Mr. Richardson. Rather it was a letter written to Mr. Richardson by Mr. Hunt wherein Mr. Hunt offered his assistance in the arbitration proceedings against Mr. del Canto because, Hunt said, he had known Mr. del Canto as a waiter at the Sheraton Carlton Hotel for almost ten years

---

1. The decision in *Rubin v. Tourneau,* 797 F.Supp. 247 (S.D.N.Y.1992), was rendered on July 9, 1992, the complaint was filed on December 16, 1992, and the amended complaint was filed on January 21, 1993.

2. Plaintiff's employer, ITT–Sheraton Corporation, was originally a defendant in this case but was subsequently dismissed with prejudice pursuant to a settlement agreement.

and had a high regard for him. Mr. Hunt wrote that he had learned about the incident from Mr. del Canto himself. The Hunt letter in no way, either by its language or by implication, provides a basis for the assertion that Mr. Richardson communicated to Mr. Hunt any suggestion that Mr. Richardson disbelieved Mr. del Canto or thought he was guilty of theft. Indeed, it does not even suggest that Mr. Hunt spoke with Mr. Richardson before writing the letter.

As for Mr. Richardson's deposition testimony, when one looks at the cited portion, lines 11 and 12 on page 58 of the deposition, one finds absolutely nothing on those lines or on that page to support the assertion that Mr. Richardson disbelieved Mr. del Canto or thought him guilty of theft. When one turns to Plaintiff's own deposition in this case, however, on pages 65 and 66, one finds the following:

QUESTION: Did Ron (Richardson) or anybody else from the Union ever tell you that they didn't believe your story about the events of December 17th, about what happened on the night of December 17th?

ANSWER: No.

QUESTION: Did Ron or any other Union representative tell you they thought you took property from the Sheraton Carlton on December 17th?

ANSWER: Now that you ask me, I remember reading the report of security at the front office on one of the occasions that I was—

QUESTION: The report of hotel security?

ANSWER: Hotel security. On Ron's desk. He gave it to me and so I read it and he said what do you think and I said, Ron, it is a whole bunch of lies and he said, well, Ricardo, why would they lie, and I said I don't know. He said they are incriminating. And I said but they are a whole bunch of lies.

QUESTION: Was anybody else in the room with you and Ron?

ANSWER: No. He was filing something, doing some kind of paperwork while I was reading the report. I was there for about 45 minutes in his office, maybe an hour.

QUESTION: Anybody else? Anybody in the world ever tell you that Ron or any other Union representative had said that you were lying about these events?

ANSWER: No.

QUESTION: Did anybody else, anybody in the world I'm talking about, ever tell you that Ron or any other Union representative said you stole property from the Sheraton–Carlton?

ANSWER: No.

Del Canto Dep. at 65–66. Thus, even Mr. del Canto, the Plaintiff in this case, testified that Mr. Richardson never accused him of being a thief and never called him a liar and that nobody else "in the world" ever told him that Mr. Richardson or any other Union representative ever accused him of lying about the events or of stealing property from the hotel.

Rule 11 of the Federal Rules of Civil Procedure, as it existed at the time this lawsuit was filed, provided:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law....

With respect to the defamation claim, Plaintiff's counsel entirely failed to meet his responsibility under Rule 11 to engage in a "reasonable inquiry" to determine whether the claim was "well grounded in fact."

In *Hilton Hotels Corp. v. Banov*, 899 F.2d 40 (D.C.Cir.1990), also a defamation case, counsel was sanctioned either because he had "relied solely on plaintiff's unverified hearsay statement when he drafted the amended complaint or he knew that the claims lacked basis in fact." 899 F.2d at 42. The D.C. Circuit affirmed this Court's imposition of Rule 11 sanctions because it was plain that

counsel had "made no attempt independently to corroborate [plaintiff's] second-hand account of the alleged defamations." *Id.* at 43. "[Counsel] should have realized that [plaintiff] could not possibly prevail at trial unless one or more persons could be found to testify to having received the alleged defamations." *Id. See also Danik, Inc. v. Hartmarx Corp.,* 875 F.2d 890, 895 (D.C.Cir.1989), *aff'd in relevant part sub nom., Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

The situation here is even more egregious; even Plaintiff does not assert that he was aware that Local 25 or Mr. Richardson or anyone else ever made any defamatory statements about him. Had Plaintiff's counsel inquired of his own client with respect to the basis for the defamation claim before he filed suit, Mr. del Canto presumably would have told him what he later said under oath: that nobody "in the world" had ever told him that Mr. Richardson or Local 25 called him a liar or a thief or defamed him in any way. Had Mr. del Canto told counsel one thing before the complaint was filed in December 1992 and something different in his deposition in March 1993, counsel should have reevaluated the case and dismissed at least the defamation claim after the close of discovery in June 1993. *See Hilton Hotels Corp. v. Banov,* 899 F.2d at 45 (an attorney who should have known that his client's case was meritless when he commenced the action held accountable for the expense incurred from his continuing representation after he becomes aware that the case is meritless).[3]

Plaintiff's counsel failed to submit an affidavit or deposition testimony from Albert Hunt in connection with the cross-motions for summary judgment. His unsubstantiated assertion that Mr. Hunt would have testified at trial to events in addition to those set forth in his letter, and counsel's "assumption" that the "facts" supporting the defamation

claim would have come out at the deposition of Mr. Hunt, which Plaintiff's counsel had hoped Defendants would notice, are unavailing. The Court must take the record as it stands on this motion for sanctions, and it contains no evidentiary support for the assertion that Mr. Hunt told Plaintiff's counsel prior to filing the lawsuit that Mr. Richardson or some officer of Local 25 had defamed Mr. del Canto. *See Saunders v. Lucy Webb Haynes National Training School,* 124 F.R.D. 3, 7–8 (D.D.C.1989). Plaintiff's allegations of defamation "are contradicted in so many ways on this record that the Court must conclude that the plaintiff did not conduct reasonable pre-filing inquiries and that the plaintiff should have realized ... that [his] claim was not well founded in fact." *Allen v. Utley,* 129 F.R.D. 1, 5 (D.D.C.1990).

With respect to the conspiracy claim, Plaintiff's counsel asserts that he was entitled to file a lawsuit even in the absence of any evidence that Mr. Richardson or any Local 25 official defamed Mr. del Canto because he alleged a conspiracy and he had evidence that hotel officials were defaming Mr. del Canto. Assuming, *arguendo,* that he had evidence that hotel employees were defaming Mr. del Canto, counsel would nevertheless have been required to present some evidence of a conspiracy to defame between the hotel and the Union to maintain a conspiracy claim against the Union on the basis of an overt act by the hotel. While Plaintiff may be correct that conspiracy often is difficult to establish at the pleading stage, *see Roberts v. Heim,* 670 F.Supp. 1466, 1495–96 (N.D.Cal.1987), *aff'd in part & rev'd in part, Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646 (9th Cir.1988), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989), here Plaintiff has pointed to no evidence at all of a conspiracy between the hotel and the Union.

---

**3.** The Court is not persuaded by counsel's argument that he did not take the opportunity to dismiss after the close of discovery because he could not reach his client who was out of the country and that otherwise he would have discussed the dismissal option with his client. Plaintiff was not out of the country immediately after his own deposition which made abundantly

clear that there was no basis for a defamation claim. Furthermore, counsel could have sought a stay in the briefing and argument of the summary judgment motions after discovery in order to reach and consult with his client, thereby sparing Defendant at least the expense of briefing and arguing the dispositive motions.

■ The amended complaint in this case was filed on January 21, 1993. The amendments to Rule 11 of the Federal Rules of Civil Procedure went into effect on December 1, 1993. By their terms, they govern "all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." 146 F.R.D. 404 (April 22, 1993) (Supreme Court order amending the Federal Rules of Civil Procedure). Since the sanctions question at issue here relates to whether Plaintiff's counsel conducted a pre-filing inquiry, it would not be "just" or "practicable" or even rational to apply standards to Plaintiff's conduct in January 1993 that were not then in effect and about which neither he nor Defendants could possibly even have known.

Plaintiff and his counsel were put on notice as to what their pre-filing obligations were by Rule 11 as it existed at the time the lawsuit was originally brought in December 1992 and at the time the amended complaint was filed in January 1993. Both parties necessarily were operating under the standards of Rule 11 as it existed then, and counsel's conduct must be judged under those standards. *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union,* 25 F.3d 509, 516 (7th Cir.1994); *Knipe v. Skinner,* 19 F.3d 72, 78 (2nd Cir.1994) (To apply the standards of Rule 11 as amended would charge Plaintiff "with knowledge of a rule not in effect at the time of filing and therefore would not advance Rule 11's central goal of deterring baseless filings."). As discussed above, under the standards of Rule 11 as they existed when the complaint and amended complaint were filed, the Court finds that there was an inadequate pre-filing inquiry.

■ Under Rule 11 before it was amended, the Court would be *required* to impose sanctions once it had found a Rule 11 violation. Under Rule 11 as amended, however, the Court has discretion whether to impose sanctions. Rule 11(c), Fed.R.Civ.P. As the Second Circuit has recently held, even when the pre-amendment standards of Rule 11 are found to apply because the conduct at issue occurred before the effective date of the amendments, any sanctions motion considered after the effective date is subject to the discretion of the Court whether to impose sanctions. *Knipe v. Skinner,* 19 F.3d at 78 ("Because Rule 11 sanctions should be imposed with caution ... a just and practicable application of the amended Rule 11 requires that the district court be afforded an opportunity to exercise its discretion whether to impose sanctions under the amended version.").

In the exercise of this newly-authorized discretion under the amendments to Rule 11, it also seems appropriate for the Court to look to the nature of the sanctions authorized by the amended Rule. Insofar as relevant, that Rule provides:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B) [not relevant here], the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Rule 11(c)(2), Fed.R.Civ.P.

The Court is sympathetic to Plaintiff's argument that Rule 11 sanctions may chill the zealousness of attorneys who often represent on a contingent fee basis individual clients who might not otherwise be able to afford representation. Such counsel undoubtedly provide important service to the unrepresented who deserve their day in court to resolve their legitimate disputes. In the circumstances presented here, however, it is without doubt appropriate to impose some sanction under Rule 11 in order to deter repetition of the unacceptable conduct of counsel and "comparable conduct by others similarly situated." Rule 11(c)(2), Fed. R.Civ.P. To further the goals of Rule 11, courts must make clear, at the very least, that a claim must not be filed when a reasonable pre-filing inquiry would have shown that it is not well grounded in fact. *See Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1179 (D.C.Cir.1985) ("Rule 11 is specifically de-

signed to deter groundless litigation tactics and stem needless litigation costs to courts and counsel."). That is clearly the case here.

In the circumstances presented, the Court therefore has determined, in its discretion, to impose a combination of the creative proposal suggested by Plaintiff's counsel himself and payment to movant of some but not all of the reasonable attorneys' fees incurred as a result of the violation. Therefore, the Court will accept counsel's offer to pay into the registry of the Court $500 to be used as scholarships for continuing legal education courses on Rule 11 to be paid equally to two young lawyers with five to ten years of experience in litigating for individuals on a contingent fee basis, in order to educate them and thereby deter the conduct of at least two lawyers from Rule 11 violations. In addition, the Court directs Plaintiff's counsel to pay Defendant's counsel $3,500.00 for a portion of his fees and costs related to litigating the defamation and conspiracy claims.[4]

SO ORDERED.

---

**4.** In a post-argument submission to the Court, counsel for Defendants estimated their fees and costs in this matter since December 1992 to be approximately $16,000 ($13,497.41 already billed plus an additional $1,000 to $1,500 for the summary judgment hearing and $550 for a deposition transcript), roughly equally split between the statutory and defamation issues.