Veale v. Penuche's Ale House          CV-98-447-B    11/02/98

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

Scott W. Veale

    v.                                    Civil No. 98-447-B

Penuche's Ale House, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Scott Veale brought this civil rights
action against several defendants, seeking both compensatory and
punitive damages for a ruptured Achilles tendon he suffered while
at defendant Penuche's Ale House in July 1997.  In addition to
the complaint (document no. 1), plaintiff has filed an affidavit
given by his brother, David T. Veale, (document no. 2), which
plaintiff seeks to have considered as part of the complaint.
Both the complaint and its addendum (document nos. 1 and 2) are
before me to determine whether this court has subject matter
jurisdiction over the matter.  See United States District Court
for the District of New Hampshire Local Rule ("LR") 4.3(d)(1)(A);
see also Fed. R. Civ. P. 12(h)(3).  Even very generously
construing the complaint in plaintiff's favor, see Ayala Serrano
v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following
Estelle v. Gamble, 429 U.S. 97, 106 (1976) to liberally construe
pro se pleadings in that party's favor), I find that he has
failed to allege the minimal facts necessary to invoke this
court's subject matter jurisdiction, and therefore, I recommend
that this action be dismissed.

## Background

This action appears to be the latest in a series of lawsuits stemming from a disputed parcel of land in Marlborough, New Hampshire.  Plaintiff contends here that he was the victim of a conspiracy to injure him, because he is a "public figure" at the center of a "public controversy" over the Marlborough land. Plaintiff asserts that the challenged conspiracy evolved out of the New Hampshire Supreme Court's July 21, 1997 decision declining to accept his appeal from an adverse decision regarding the Marlborough property.  Although the New Hampshire Supreme Court is not a defendant in this action, its decision allegedly prompted a party at Penuche's Ale House, held just days later on July 26, 1997, at which defendants planned to and carried out a conspiracy to injure plaintiff and deprive him of the equal protection of the law.

At the party, plaintiff ruptured his Achilles tendon while playing volleyball.  When the injury occurred, plaintiff, his brother David Veale, and a few witnesses all thought that another guest, defendant Christina Perkins, had accidently stepped on plaintiff's ankle during the volleyball game.  Plaintiff immediately left the party and went to the Cheshire Medical Center to have his ankle treated.  He contends that the Cheshire Medical Center provided negligent care and failed to contact the local police, in furtherance of the conspiracy to deprive plaintiff of his equal protection rights.  Plaintiff's ankle was cast, however, and he returned to the party.

2

The next day plaintiff reported the incident to the police, telling how he believed the injury was intentionally caused, because no ball was in play at the time it occurred. The police commenced an investigation into the alleged assault. In October, the police informed plaintiff that Perkins denied "saying anything or seeing anything" which would assist the assault investigation.

After that phone call, plaintiff and his brother surmised that in fact Perkins had not caused the injury, but that the owner of Penuche's, defendant Todd Tousley, fired a rubber ball at his ankle from a paint gun, which caused his Achilles tendon to rupture. As several patrons of Penuche's owned "Paintball Guns," the two brothers concluded that Tousley had injured plaintiff. Plaintiff called the police back to inform them of his new theory.

Then in mid-January, 1998, David Veale recalled seeing Tousley with an apparatus which resembled a paint gun. David Veale called the Swanzey police to inform them again of the paint ball gun theory. Although the police advised David Veale that they would consider his recollection, on January 28, 1998, the Swanzey police closed its investigation into the alleged assault, concluding that no "person or persons had the motive or intent to purposely injure [plaintiff]."

Based on these alleged facts, plaintiff avers that he was injured as part of a conspiracy against him because of the publicity surrounding the Marlborough land dispute, and that the

3

Swanzey police negligently investigated the assault in furtherance of the conspiracy to deprive him of the equal protection of the law, in violation of the 14th Amendment. The complaint asserts causes of action under 42 U.S.C. §§ 1983, 1985(3) and 1986, and 18 U.S.C. §§ 241 and 242. Named as defendants are Penuche's Ale House, its owner Todd Tousley, two of plaintiff's friends, Christina Perkins and Colin Andraizic, the Cheshire Medical Center, the Swanzey Police Department and the Town of Swanzey. As explained more fully below, the alleged facts fail to make the threshold showing that defendants deprived him of his right to equal protection of the law, the single constitutional violation alleged, or that the requisite state action occurred.

Discussion

**1. Claims pursuant to 18 U.S.C. §§ 241 and 242.**

As an initial matter, I recommend dismissal of plaintiff's claims under 18 U.S.C. §§ 241 and 242. Those statutes provide criminal penalties against persons who "under color of any law . . . deprive [another] of any rights, privileges, or immunities secured or protected by" federal law, 18 U.S.C. § 242 (Supp. 1998), or who "conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise of enjoyment" of such rights or privileges of law, 18 U.S.C. § 241 (Supp. 1998). They are the criminal analogs to the civil rights statutes, see 42 U.S.C. § 1983 and § 1985(3), and do not give rise to private causes of action. See, e.g., U.S. v. Lanier, 520 U.S. 259, ___,

4

117 S. Ct. 1219, 1224-28 (1997) (discussing the origins of §§ 241 and 242, as distinct from 42 U.S.C. §§ 1983 and 1985, to explain the scope of criminal liability attached thereto); see also United States v. Walsh, __ F. Supp.2d __, 1998 WL 469661, *4 (W.D.N.Y. July 14, 1998) (explaining that § 242 is the criminal counterpart to § 1983); Golden v. U.S. Marshals Service, 1995 WL 705134, *2 (N.D. Cal. Nov. 15, 1995) (holding that §§ 241 and 242 provide no private right of action and cannot be the basis for a civil suit).

As these criminal statutes do not give rise to private claims for civil rights violations, I conclude that these claims are frivolous and could not be substantiated by amendment. I, therefore, find that this court does not have subject matter jurisdiction to consider either the 18 U.S.C. § 241 or § 242 claims. See 28 U.S.C. § 1331 (providing the district courts with jurisdiction of "all civil actions" arising under federal law); see also 28 U.S.C. § 1343(3) (providing district court jurisdiction over "any civil action" authorized by law to redress civil rights violations). Accordingly, I recommend that they be dismissed. See Fed. R. Civ. P. 12(h)(3); see also LR 4.3(d)(1)(A)(i).

**2. Claims under 42 U.S.C. §§ 1983, 1985(3) and 1986.**

The remaining three causes of action are asserted under 42 U.S.C. §§ 1983, 1985(3) and 1986, each of which does provide a

5

civil remedy for the violation of civil rights.[1]  In determining whether plaintiff has invoked this court's subject matter jurisdiction, it is appropriate to assess whether he has stated the essential elements of a claim under each statute.  See Van Daam v. Chrysler First Fin. Servs. Corp., 124 F.R.D. 32, 33 (D.R.I. 1989), aff'd, 915 F.2d 1557 (1st Cir. 1990) (declining to exercise jurisdiction where plaintiff had failed to demonstrate it existed); see also Ricketts v. Midwest Nat. Bank, 874 F.2d 1177, 1180 (7th Cir. 1989) (citing Bell v. Hood, 327 U.S. 678, 681-82 (1946) for the proposition that the federal court need not entertain claims that "'clearly appear[] to be immaterial and solely made for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'"); Tucker v. Forster, 1997 WL 72156, *1 (E.D. La. Feb. 19, 1997) (although deciding a motion for judgment on the pleadings, explaining that § 1343 establishes jurisdiction only if the underlying § 1983 claims are sufficient).  The court may dismiss the complaint for want of federal subject matter jurisdiction, however, only if the court determines that the claims are insubstantial or frivolous.

---

[1]In relevant part, 42 U.S.C. § 1983 provides "[e]very person who, under color of any [state law] subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . .."  (Supp. 1998). Similarly, 42 U.S.C. § 1985(3) provides in pertinent part that "if two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws . . .," they may be liable for injury caused thereby in an action for damages. Lastly, 42 U.S.C. § 1986 creates a cause of action for damages caused by a § 1985 conspiracy against a person who neglected to prevent such a conspiracy.  See 42 U.S.C. § 1986 (West 1994).

See <u>Ricketts</u>, 874 F.2d at 1180; <u>see</u> <u>also</u> <u>Schucker v. Rockwood</u>, 846 F.2d 1202, 1204 (9th Cir. 1988) (affirming dismissal of <u>pro</u> <u>se</u> action where it was "'absolutely clear the deficiencies of the complaint could not be cured by amendment'" (quotation omitted)).  After carefully considering the complaint and its addendum, for the reasons set forth below, I find that the claims asserted are wholly insubstantial and frivolous, warranting dismissal at this preliminary stage of review.

<u>(a) The equal protection clause</u>.

In any civil rights action, the threshold inquiry is whether plaintiff has alleged a civil rights violation.  <u>See</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979) (finding no § 1983 liability where plaintiff has failed to satisfy the threshold requirement that he was "deprived of a right 'secured by the Constitution and laws.'"); <u>see</u> <u>also</u> <u>MacFarlane v. Smith</u>, 947 F. Supp. 572, 574 (D.N.H. 1996) (requiring plaintiff to "make the predicate showing of a constitutional violation on these facts" before turning to the "under color of [law]" element of a § 1983 claim).  Here plaintiff's single contention of a civil rights violation for all three causes of action asserted is that defendants conspired to violate his right to equal protection of the law.

The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const., amend. XIV, § 1.  "As a general matter, the equal protection clause serves to protect suspect classes and fundamental interests from inequitable

7

treatment." <u>Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen</u>, 932 F.2d 89, 94 (1st Cir. 1991). Challenges based on an alleged deprivation of equal protection attack state legislation or other official action which treats identifiable groups of individuals arbitrarily. <u>See</u>, <u>e.g.</u>, <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992) (considering equal protection challenge to tax legislation); <u>Pennell v. San Jose</u>, 485 U.S. 1, 14 (1988) (same for a rent control law); <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u> 473 U.S. 432, 439-40 (1985) (same for zoning regulation affecting the mentally handicapped); <u>see</u> <u>also</u> <u>Hayden v. Grayson</u>, 134 F.3d 449, 453 n.3 (1st Cir. 1998) (explaining that the equal protection clause protects not only against "such invidious classifications as race, gender and religion, but any arbitrary classification of persons").

While "most laws differentiate in some fashion between classes of persons," <u>Nordlinger</u>, 505 U.S. at 10, unless the challenged state action burdens a suspect class or impinges upon a fundamental right, it will be upheld as long as it is rationally related to a legitimate governmental goal. <u>See</u> <u>id.</u> at 11; <u>Cleburne</u>, 473 U.S. at 440 ("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."); <u>see</u> <u>also</u> <u>Hoffman v. City of Warwick</u>, 909 F.2d 608, 621-22 (1st Cir. 1990) (applying rational relationship test to a veterans' employment preference law because no suspect class or fundamental right was implicated).

8

        (b) The private defendants.[2]

        Plaintiff does not allege either that he is a member of a
suspect class or that he was deprived of any of his fundamental
rights, except the right to equal protection itself.  Instead, he
contends that, because of his personal problems and notoriety,
defendants conspired to assault and/or batter him.  He further
alleges that they did so with impunity, because the police
advanced the conspiracy by declining to arrest the offenders.

        The nearly fatal flaw with these allegations, however, is
that central conduct challenged -- that surrounding plaintiff's
injury -- gives rise perhaps to tort, but not to constitutional,
liability.  See, e.g., Paul v. Davis, 424 U.S. 693, 699-701
(1976) (describing how the Fourteenth Amendment was not intended
to be a "font of federal tort law" or to replace the State legal
systems already in place).  The alleged assault at Penuche's and
the subsequent treatment at Cheshire Medical Center involved only
private parties.  Whether plaintiff was injured accidently or
deliberately, the persons identified in the complaint as possibly
causing or aggravating the ruptured tendon are not state actors,
nor could their conduct be imputed to the state for purposes of
stating an equal protection clause violation.  See Yeo v. Town of
Lexington, 131 F.3d 241, 248 n.3 (1st Cir. 1997) (explaining that
the "color of law" requirement of § 1983 is the same as the

        [2]Five of the seven named defendants are the following
private citizens or persons:  Penuche's Ale House, Cheshire
Medical Center, Todd Tousley, Christina Perkins and Colin
Andraizic (collectively the "private defendants").

                                9

"state action" requirement of the Fourteenth Amendment); see also Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257-60 (1st Cir. 1994) (dismissing pro se complaint which failed to allege facts to satisfy any one of the three tests for imputing private action to the state for purposes of § 1983 liability); MacFarlane, 947 F. Supp. at 574 (holding a private actor liable under § 1983 only if he is a "'willful participant in joint activity with the State or its agents.'" (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970)). Without the requisite governmental action, there simply cannot be an equal protection claim based on the alleged assault and treatment of the injury. See U.S. Const., amend. XIV (providing that "no state" shall deny a person the equal protection of the law); see also Cohen v. Brown University, 101 F.3d 155, 192 (1st Cir. 1996) (stating how equal protection is implicated when the government's classification results in individuals being treated differently from those similarly situated).

Plaintiff's contention that these private defendants conspired with the Swanzey police department to insure he was deprived of the equal protection of the law does not pull the private defendants into the realm of "state action" either.

> 'In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law . . . that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with reference to material facts.'

10

MacFarlane, 947 F. Supp. at 579-80 (quoting Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977)). While I appreciate that the complaint is being reviewed solely for purposes of determining whether plaintiff has invoked this court's subject matter jurisdiction, state action is not only an essential element to any equal protection claim, but also "'a jurisdictional requisite to a § 1983 claim.'" See Yeo, 131 F.3d at 248 n.3 (quoting Polk County v. Dodson, 454 U.S. 312, 315 (1981)). As plaintiff can only satisfy the state action requirement for these private defendants by alleging a conspiracy, the conspiracy allegations are properly reviewed at this juncture. See id. (explaining why the "essential state action" inquiry must be addressed first).

Nothing asserted in the complaint connects the private defendants to the state actors/police or in any way substantiates plaintiff's bald claim of a conspiracy between them. The alleged deprivation was failure to receive equal protection under the law. That failure to protect, however, is based on facts which arose after the private defendants had committed the purported criminal assault. Nothing in the complaint indicates that the private defendants acted jointly with the State or its agents, see Adickes, 398 U.S. at 152, when they "conspired" to hurt plaintiff. Plaintiff neither avers, nor implies, facts which could even very generously be construed as forming the basis of an agreement between the private defendants and the police that their criminal activity would be condoned, or at least not

11

condemned.  Accordingly, I do not see how the private defendants' conduct can be imputed to the Swanzey police for purposes of satisfying the state action requirement of the alleged equal protection violation claim underlying all the causes of action. See Rockwell, 26 F.3d at 258 (describing how close the nexus between the private actor and the state must be, or how the private party must assume the powers of the state in performing some public function, before the "color of state law" requirement is met).

Finally, although purely private conspiracies are actionable under 42 U.S.C. §§ 1985(3) and (1986), plaintiff has not averred the elements of a claim under either statute.  To state a § 1985(3) cause of action, plaintiff must contend that the alleged conspiracy was (1) motivated by "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus,' Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)," and (2) directed at "'interfering with rights' that are 'protected against private, as well as official, encroachment,' Carpenters v. Scott, 463 U.S. 825, 833 (1983)."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993); accord Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996).  As discussed above, plaintiff only asserts an equal protection violation, and the equal protection clause protects only against state, not private, encroachment.  See Bray, 506 U.S. at 278 (stating how the general rights guaranteed by the Fourteenth Amendment "are obviously not protected against private infringement" (emphasis

12

in original)). Moreover, plaintiff avers that he was mistreated because of his particular, individual circumstances, not because he is a member of a protected class. Without either element of § 1985(3) satisfied, plaintiff's conspiracy claim does not invoke the jurisdiction of this court. See Libertad v. Welch, 53 F.3d 428, 447 (1st Cir. 1995) (requiring strict adherence to these elements to prevent § 1985(3) from becoming a source of "'general tort law'" (quoting Griffin, 403 U.S. at 102)). And, there is no § 1986 claim without a § 1985 claim. See 42 U.S.C. § 1986 (rendering liable every person with knowledge of "any of the wrongs conspired to be done, and mentioned in section 1985 of this title," who neglects to prevent such wrongful act); see also McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990) (dismissing § 1986 claim because plaintiff failed to state a valid § 1985(3) claim).

By not alleging the essential elements of a cause of action under either 42 U.S.C. § 1983 or §§ 1985(3) and 1986, plaintiff has failed to assert a federal question in order to invoke this court's subject matter jurisdiction. See Van Daam, 124 F.R.D. at 33 (requiring plaintiff to allege the essential elements of the claim to establish jurisdiction); see also Yeo, 131 F.3d at 248 n.3 (addressing jurisdictional requirement of state action first); see also 28 U.S.C. § 1331 and 1343(3). Accordingly, I recommend that the claims asserted under 42 U.S.C. §§ 1983, 1985(3) and 1986 against the private defendants based on an alleged conspiracy to violate plaintiff's equal protection rights

13

be dismissed.  See LR 4.3(d)(1)(A); Fed. R. Civ. P. 12(h)(3).

(c) The state defendants.

In addition to the conspiracy allegation disposed above, plaintiff contends that the Swanzey police negligently investigated the reported assault and the Town of Swanzey failed to properly hire, train, supervise or discipline the police department, both of which deprived him of his equal protection rights.  While each of these defendants are clearly "state actors," plaintiff still has not set forth the essential elements of an equal protection clause claim.

Generously construing plaintiff's contention that the Swanzey police negligently investigated the alleged crime, it could be intended as a claim for selective enforcement of the law, in violation of the equal protection clause.  See, e.g., Rubinovitz v. Rogato, 60 F.3d 906, 909 (1st Cir. 1995) (construing a claim of retaliatory enforcement of local zoning regulations as charging defendants with "improper selective enforcement of lawful local regulations").  Such a claim requires plaintiff to allege:

> (1) that he, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Id. at 910 (quoting Yerardi's Moody St. Restaurant & Lounge, Inc. v. Bd. of Selectmen, 878 F.2d 16, 21 (1st Cir. 1989).  Based on the facts in the complaint, neither component of a selective

14

prosecution claim has been alleged.

First, plaintiff does not contend that he has been treated differently than others similarly situated. Plaintiff alleges that he was mistreated because of his status as a public figure. It is not clear whether he was "'singled . . . out for unlawful oppression,'" id. (quoting <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 19 (1st Cir. 1989)), from all citizens because of his "public figure" status, or whether he among other public figures was treated differently. Whether compared to all citizens or all public figures, however, plaintiff must have identified specific instances where others who reported crimes against them received "non-negligent" police investigations which resulted in the offenders being arrested. <u>See</u> <u>id.</u> (explaining that plaintiff must first "'identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently'" (quotation omitted)). Plaintiff completely fails to "identify and relate" any instance where other public figures, or ordinary citizens, received treatment different from what he received.[3]  <u>See</u> <u>id.</u>; <u>cf.</u> <u>Esmail</u>

_____

[3]Moreover, where, as here, the "class" being discriminated against is not a typical suspect class, plaintiff must show that the discrimination was purposeful, implying that the course of action was selected "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Hayden v. Grayson</u>, 134 F.3d 449, 453 (1st Cir. 1997) (discussing how victims of child sexual abuse could be an arbitrary class denied equal protection) (quotation omitted)).  Even such arbitrary discrimination, however, must be against an identifiable group, not just an individual. <u>See</u> <u>id.</u> at 454 (explaining how "'[d]iscrimination based merely on individual, rather than group, reasons will not suffice'" to establish equal protection violation).

15

v. Macrane, 53 F.3d 176, 178-80 (7th Cir. 1995) (allowing a "class of one" to support an equal protection claim if the plaintiff was spitefully prosecuted "for reasons wholly unrelated to any legitimate state objective.").[4]

Second, plaintiff has failed to allege how the "selective treatment" he purportedly received from the police was based on an "impermissible consideration such as . . . malicious or bad faith intent to injure a person." See Rubinovitz, 60 F.3d at 910-11 (explaining that where there are no allegations of invidious discrimination or fundamental rights deprivation, an equal protection claim may be based on "bad faith or malicious intent to injure"). To make such a showing, plaintiff must have alleged facts which indicate "egregious procedural irregularities or abuse of power." PFZ Properties, Inc. v. Rodriquez, 928 F.2d 28, 32 (1st Cir. 1991). The "malice/bad faith standard" is very high and must be "scrupulously met." Rubinovitz, 60 F.3d at 911 (citing cases to show standard). Adverse decisions by local law enforcement agencies or even departures from administrative procedures established under state law, whether or not in excess of some legal authority, do not normally give rise to an equal protection violation claim. See PFZ Properties, 928 F.2d at 32-

---

[4]Unlike the plaintiff in Esmail who alleged that he was denied a liquor license because of the mayor's personal animosity toward him, plaintiff here asserts only that he was injured by private individuals, at a party, the investigation into which resulted in no arrests. These facts do not approach the type of "governmental action wholly impossible to relate to legitimate governmental objectives" which the court found underlying Esmail's "unusual" equal protection clause claim. See id.

33 (declining to find an equal protection claim absent allegations of "egregious procedural irregularities or abuse of power"); see also Yerardi's Moody St. Restaurant, 932 F.2d at 94 (affirming directed verdict on equal protection claim where the "malice/bad faith" standard had not been met); cf. Rubinovitz, 60 F.3d at 912 (reversing summary judgment where plaintiff adduced enough evidence of malice in the sudden reversal of certain zoning decisions to let the equal protection claim go to the jury).

Based on the complaint and its addendum, the police investigated the alleged crime for six months. During that period, they spoke with plaintiff and his brother at least three times after the initial report, and considered plaintiff's paintball gun theory. The police also interviewed at least three witnesses. In the January 28, 1998 letter to plaintiff advising him that the investigation was closed, the police explained that the decision was based on the fact that they could not "find where any person or persons had the motive or intent to purposely injure you," and that the injuries "cannot be proven to be the result of an intentional act."

These allegations simply do not constitute the "egregious procedural irregularities" or evidence the "abuse of power" needed for an equal protection allegation based on "malicious or bad faith intent to injure." See Rubinovitz, 60 F.3d at 911-12. The complaint simply fails to assert the essential elements of a claim against the Swanzey police for a violation of the equal

17

protection clause based on the improper, selective enforcement of local law.  See id.

Similarly, plaintiff cannot maintain a claim against the Town of Swanzey.  The predicate for a claim based on a failure to supervise or train is that the police violated plaintiff's constitutional rights.  As discussed above, however, plaintiff has failed to allege sufficient facts of such a "street-level" violation by the police.  Without a "street-level" constitutional violation, plaintiff's claims against the Town of Swanzey, which depend on that predicate constitutional deprivation, necessarily fail.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding that municipal liability under § 1983 arises only where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."); see also Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992)(requiring the inadequate training be affirmatively linked to the constitutional deprivation suffered).  Accordingly, I conclude that plaintiff has not stated the essential elements of an equal protection violation or a § 1983 claim based thereon against either the Town of Swanzey or its police department.  I find that plaintiff's claims are so immaterial and insubstantial that they do not raise a federal question for purposes of invoking this court's subject matter jurisdiction to consider them.  See Ricketts, 874 F.2d at 1180 (citing Bell v. Hood, 327 U.S. at 681-82 to explain that "wholly insubstantial and frivolous" claims "solely made for the purpose of obtaining

18

jurisdiction" need not be entertained); see also 28 U.S.C. §
1343(3).

### 3. State law claims.

While plaintiff may have state tort law claims in negligence
and assault (or perhaps even battery, although plaintiff has not
asserted such a claim) against any or all of the defendants,
"'[i]t is not enough simply to give these state law claims
constitutional labels such as . . . "equal protection" in order
to raise a substantial federal question under section 1983.'"
Yerardi's Moody St. Restaurant, 932 F.2d at 94 (quotations
omitted). Neither plaintiff nor the police was able to find any
facts to substantiate plaintiff's theory that his injury resulted
from a conspiracy to hurt him because of his status as a public
figure. Nothing about the incidents surrounding his ruptured
tendon remotely suggests that official governmental action
discriminated against him to deprive him of his constitutional
rights. See Hayden, 134 F.3d at 455 ("'[d]iscrimination based
merely on individual, rather than group, reasons will not
suffice'" for purposes of equal protection analysis (quotation
omitted)). Whether or not plaintiff could assert a claim under
the New Hampshire Constitution, as he alleges, or state law, he
has not invoked this court's subject matter jurisdiction under 28
U.S.C. § 1331, § 1332, or § 1343. This court, therefore, cannot
exercise its supplemental jurisdiction power over any state law
claims plaintiff may have. See 28 U.S.C. § 1367.

19

## Conclusion

For the reasons set forth above, I recommend that plaintiff's complaint, as amended (document nos. 1 and 2) be dismissed for failing to invoke this court's subject matter jurisdiction.  <u>See</u> LR 4.3(d)(1)(A); Fed. R. Civ. P. 12(h)(3).

Any objections to this report and recommendation must be filed within ten days of receipt of this notice.  Failure to file an objection within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   November 2, 1998
cc:     Scott Veale, <u>pro</u> <u>se</u>

20