Levesque v. Nashua                    CV-97-249-M    08/31/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Jacqueline Levesque,
        Plaintiff

        v.                                      Civil No. 97-249-M
City of Nashua and
Ronald Weliber,
        Defendants


**O R D E R**


Plaintiff, Jacqueline Levesque, brings a civil rights action pursuant to 42 U.S.C.A. § 1983 alleging violations of her Fourth, Fifth, and Fourteenth Amendment rights by the City of Nashua and Nashua police officer Ronald Weliber.[1]  She also asserts state law claims arising from the same incident.  Defendants move for summary judgment, and plaintiff objects.[2]  For the reasons that follow, defendants' motion is granted in part and denied in part.


**Standard of Review**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1]The pleadings suggest some confusion about the defendant police officer's name since the parties use both "Welliver" and "Weliber."  For purposes of this order, the court will refer to the defendant officer as Weliber.

[2]Plaintiff's counsel is reminded that pleadings shall be double spaced.  LR 5.1(a).

56(c).  The moving party first must show the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The court interprets the record in the light most favorable to the nonmoving party and resolves all inferences in its favor.  Saenger Organization v. Nationwide Ins. Assoc., 119 F.3d 55, 57 (1st Cir. 1997).  Summary judgment will be granted if the record shows no trialworthy factual issue and if the moving party is entitled to judgment as a matter of law.  EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).

## Background

During the morning of May 17, 1994, while Jacqueline Levesque and her husband were discussing the fact that he had quit his job, she shut herself in the bedroom and refused to answer her husband through the door.  She then threw an empty container for prescription Motrin out the door with a note inside that said "Tell the kids I love them and thanks for screwing up my life."  When Mrs. Levesque refused to answer her husband's questions about how many pills she had taken, he called the Nashua Police Department (911).  He was concerned that she might have taken an overdose.  He reported that Mrs. Levesque drank vodka and orange juice drink that morning, which was very unusual

2

for her, and that he did not know whether she had taken many pills or none.

Mrs. Levesque left the house before the police arrived, explaining that she was going to have lunch with her ex-husband. Her husband told her that he had called 911. She did not believe him, and explained that she threw the empty container because she did not have money to buy more medication she needed for her back and shoulder injury.

After emergency vehicles and the police arrived, Mr. Levesque spoke to Officer Weliber, telling him that his wife had an alcoholic drink that morning, which was very unusual for her, and produced the empty Motrin container and his wife's note. He told the police that his wife had a back problem. He also said he did not know if she had taken no pills, one pill, or fifty pills. He also explained that she had gone to her ex-husband's place of business in Hudson.[3] Officer Weliber called the Hudson police to seek their assistance in locating Mrs. Levesque.

The Hudson police responded, dispatching a fire truck and four firemen, an ambulance, three paramedics, a gurney, and restraints, and two police cruisers and police officers (who were communicating with Nashua police by radio). Mrs. Levesque was sitting in her ex-husband's office at the car dealership when the

---

[3]Plaintiff's ex-husband, Pete Toom, once served as a New Hampshire State Trooper (from 1969 until 1977). Plaintiff and her ex-husband were married for about twenty-two years but were divorced in February 1993. At the time of the events pertinent to this case, he operated a car dealership in Hudson, New Hampshire.

Hudson police and emergency vehicles arrived. The police essentially locked up the business, and entered the office with paramedics, medical equipment, and firemen, saying they had reason to believe that Mrs. Levesque had taken an overdose of pills. Mrs. Levesque denied having taken an overdose of medication, but the police nevertheless insisted that the paramedics examine her. She resisted, explaining that because her husband was out of work she did not have any medical insurance and so did not want to be examined. She also told them that she had a back problem and a pinched nerve in her shoulder, and, because of her medical training (as a certified nursing assistant), she knew what medication she could take. She refused treatment by the paramedics.

Mrs. Levesque's ex-husband, Pete Toom, suggested to the police that if they intended to take plaintiff into protective custody (though he thought there was no reason to do so), they should do it quickly and allow him to reopen his business. When Mrs. Levesque refused to go to the hospital with the emergency team, Mr. Toom offered to take her, and persuaded her to go along with him, which satisfied the police. Mr. Toom drove Mrs. Levesque to the Memorial Hospital emergency room, where she walked in on her own. On his way out, Mr. Toom told Officer Weliber not to let Mr. Levesque in to see her because she was so upset and he thought his presence would aggravate the situation.

Officer Weliber and Hudson police Officer Grugan entered the emergency room together. They saw Mrs. Levesque at the sign-in

4

desk.  Officer Grugan informed Weliber of Mrs. Levesque's angry reaction to efforts to get her to go to the hospital and told Weliber that the Hudson police had not placed Mrs. Levesque in protective custody.

Mrs. Levesque told the admitting nurse that she had no medical insurance and did not need medical assistance.  She also explained that she had not taken an overdose of medication.  A male nurse came over to the desk, and Mrs. Levesque asked him to tell the officers that two Motrin would not kill her.  The male nurse talked with the officers and then came back and said he would get a doctor.  Mrs. Levesque approached the officers and asked for the "suicide" note that she had thrown from the bedroom.  Weliber handed her the note, she read it, and made an effort to explain why it did not suggest suicide.  She asked if she could show the note to the doctor who was coming out to see her, and Weliber agreed, letting her keep the note.  She put the note in her purse.[4]

A few minutes later, while they waited for the doctor, Officer Weliber asked her to return the note, saying he needed it for evidence.  Mrs. Levesque refused because she wanted to show the note to the doctor.  Weliber reached for her purse, and she

---

[4]Officer Weliber testified that Mrs. Levesque came over to him as soon as he entered the hospital and told him that she was not going to pay for the hospital examination and that she did not take pills or try to kill herself.  In response, Weliber says he told her she was in protective custody and had to see a doctor.  These facts are disputed, and are presented here in the light most favorable to Mrs. Levesque as the applicable legal standard requires.

pulled her arm away from him. Weliber grabbed Mrs. Levesque's left arm, bending it up behind her, and told her she was under arrest.[5] Officer Grugan took her right arm. Officer Grugan testified that Mrs. Levesque was yelling. Weliber continued to bend her left arm behind her and pushed on her shoulder which caused extreme pain because of her injury. Mrs. Levesque, crying, told him it hurt and that she would walk if he would let go of her arm. Weliber kept his hold, and the officers escorted her into an examining room.

During the examination, Mrs. Levesque showed the "suicide" note to the doctor and then asked the nurse to give the note back to Officer Weliber. After an interview with a mental health worker, she was medically deemed to be a low risk of entertaining suicidal intentions.

Mrs. Levesque was subsequently charged with disorderly conduct and resisting arrest. The disorderly conduct charge was dismissed, and she was acquitted of resisting arrest following trial in the Nashua District Court on August 3, 1994. At trial, both Weliber and Grugan testified that Mrs. Levesque showed no signs of intoxication or overdose when they dealt with her. Mr. Levesque testified in a deposition that Officer Weliber exaggerated everything he told him, essentially portraying Mrs.

---

[5]Officer Weliber testified that he told Mrs. Levesque she was in protective custody <u>before</u> he grabbed her arm. Officer Grugan's version is apparently that she was not in protective custody and he is unclear as to the precise time when she was told she was under arrest. Mrs. Levesque testified that Weliber grabbed her arm before telling her she was arrested.

6

Levesque as an alcoholic based on his having reported that she had consumed one drink, and presuming she was suicidal when told she might have taken an overdose of Motrin.  Mr. Toom, a former New Hampshire State Trooper, testified that the Hudson police response at his business was excessive in his view and aggravated the situation unnecessarily.

## Discussion

Officer Weliber moves for summary judgment on grounds that he did not violate Mrs. Levesque's constitutional rights by arresting her and, alternatively, that he is entitled to the protection of qualified immunity for his actions.  The City of Nashua moves for judgment in its favor, arguing that Mrs. Levesque cannot show that any claimed constitutional injury was caused by any city custom or policy.  The defendants also move for judgment on some of Mrs. Levesque's state law claims on grounds that Weliber had probable cause to arrest, thereby precluding any liability.

## A.    Civil Rights Claims Against Officer Weliber[6]

Mrs. Levesque contends that Officer Weliber arrested her without a legal basis for doing so and used excessive force in effecting the arrest, in violation of her Fourth Amendment

___

[6]To the extent Mrs. Levesque brings section 1983 claims against Officer Weliber in his official capacity, those claims are the same as claims against the city and are considered in that context.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).

7

rights.[7]  Weliber argues that he had a reasonable basis for putting Mrs. Levesque into protective custody, and that her subsequent arrest was based on her resistence to protective custody and her disorderly conduct.

The Fourth Amendment protects against arrests not based upon probable cause.  Beck v. Ohio, 379 U.S. 89, 91 (1964).  Probable cause to arrest exists if the circumstances and trustworthy information known to the police officer at the time of the arrest "are sufficient to warrant a reasonable police officer in believing that the suspect has or is committing a crime."  Tatro v. Kervin, 41 F.3d 9, 14 (1st Cir. 1994) (quotation omitted); accord Alexis v. McDonald's Restaurants, 67 F.3d 341, 349 (1st Cir. 1995).  Under New Hampshire law, a person commits the misdemeanor of resisting arrest or detention when she "knowingly or purposely physically interferes with a person recognized to be a law enforcement official, . . . seeking to effect an arrest or detention of the person or another regardless of whether there is a legal basis for the arrest.  Verbal protestations alone shall not constitute resisting arrest or detention."  N.H. Rev. St. Ann. § 642:2.  "A person is guilty of disorderly conduct if: . . . III.  He purposely caused a breach of the peace, public inconvenience, annoyance or alarm, or recklessly creates a risk thereof, by (a) Making loud or unreasonable noises in a public

_____

[7]Plaintiff also asserts violations of her Fifth and Fourteenth Amendment rights.  However, the Fourth Amendment is most pertinent to her claims.  See, e.g., Albright v. Oliver, 510 U.S. 266 (1994); Graham v. Connor, 490 U.S. 386, 394 (1989).

8

place . . . which noises would disturb a person of average sensibilities; or (b) Disrupting the orderly conduct of business in any public . . . facility. . . ."[8] N.H. Rev. St. Ann. § 644:2.

Officer Weliber's defense fails because the record submitted for summary judgment, taken in the light most favorable to Mrs. Levesque, reveals a genuine dispute as to material facts related to the circumstances surrounding Mrs. Levesque's arrest. Based on Mrs. Levesque's and Officer Grugan's testimony, Mrs. Levesque was not being held in protective custody before the struggle erupted over the "suicide" note. Nor would there have been any reason to put her under protective custody at the hospital based on Mrs. Levesque's version of the circumstances, corroborated to some extent by Officer Grugan – Mrs. Levesque apparently was sitting quietly in the emergency room receiving area waiting to be seen by a doctor. The record facts do not conclusively establish when Officer Weliber told Mrs. Levesque she was under arrest, or was being held in protective custody. In fact, the record suggests that instead of resisting detention, as Weliber claims, Mrs. Levesque was resisting his attempts to grab her purse to take the note that she intended, with Weliber's previous permission, to show the doctor. Thus, the facts are at least disputed as to whether the arrest at that time, during the struggle over the note, was based on probable cause to believe a

_____

[8]Although the statute includes other activity constituting disorderly conduct, Weliber relies on only those quoted.

9

crime was being committed, and whether plaintiff was resisting an effort to arrest her, or was resisting protective custody detention by failing to obey the lawful commands of a police officer.[9]

The yelling that Weliber points to as the sole basis for a disorderly conduct arrest did not begin until Weliber grabbed Mrs. Levesque's arm and bent it up behind her, causing pain. Thus, Mrs. Levesque's yelling appears to have occurred after she was "arrested," and so could not provide probable cause for an arrest on grounds of disorderly conduct. Accordingly, Weliber has failed to demonstrate as a matter of law that based on undisputed material facts of record he had probable cause to arrest and did not violate Mrs. Levesque's Fourth Amendment rights during the arrest.

Alternatively, Officer Weliber would be entitled to qualified immunity from liability for civil damages based on an unconstitutional arrest or detention "insofar as [his] conduct [did] not violate 'clearly established' rights of which 'a reasonable person would have known.'" Rinquette v. City of Fall River, 146 F.3d 1, 4 (1st Cir. 1998). "[W]hat matters is whether in the circumstances faced by the official, he should have understood that his conduct violated clearly established law." Id. It was clearly established by 1994, when Weliber arrested

---

[9]It is not necessary at this stage to consider the excessive force claim separately, as force not incident to a valid arrest would in many cases likely be unreasonable. See Alexis, 67 F.3d at 352.

10

Mrs. Levesque, that Fourth Amendment law required probable cause to support an arrest. Vargas-Badillo v. Diaz-Torres, 114 F.3d 3, 5 (1st Cir. 1997); Prokey v. Watkins, 942 F.2d 67, 74 (1st Cir. 1991). Thus, Weliber would be qualifiedly immune only if a reasonable officer in the same circumstances (as presented in the summary judgment record) could have concluded reasonably, even if mistakenly, that probable cause existed to arrest Mrs. Levesque. See Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Based on the record presented here, no reasonable officer in Officer Weliber's position could have reasonably, albeit mistakenly, believed he had probable cause to arrest Mrs. Levesque on grounds of resisting arrest or disorderly conduct, after he grabbed her arm and bent it up behind her. Until she was restrained in the "come along" hold, she was not under arrest, apparently not in detention, and probably not in protective custody. There was no apparent arrest to resist. Her yelling was, on this less than complete record, in response to the arrest procedure rather than a predicate to it. The situation presented in the record here does not indicate a police officer who reasonably but mistakenly believed the circumstances supported an arrest. Instead, defendants' motion suggests an after-the-fact attempt to justify an officer's angry reaction to Mrs. Levesque's refusal to return the "suicide" note. Thus, the record does not support summary judgment on qualified immunity grounds.

11

**B.    Civil Rights Claims Against the City**

Municipal liability for a claim brought under 42 U.S.C.A. § 1983 must be premised on the city's own unconstitutional actions rather than on vicarious liability for the actions of an employee.  Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 692 (1978).  In addition, a plaintiff must show that a defendant municipality acted deliberately and that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged," that is, plaintiff must show a "direct causal link between the municipal action and the deprivation of federal rights."  Board of County Comm'rs of Bryan County, Okl. v. Brown, 117 S. Ct. 1382, 1288 (1997).

Mrs. Levesque contends that the city is liable for failing to adequately train, sanction, and discipline its police officers who have violated citizens' constitutional rights, thereby permitting and encouraging such violations in the future.  A section 1983 claim asserting that a town's failure to train or supervise a police officer caused plaintiff's constitutional injury is actionable "[o]nly if the failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury."  Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.) (quoting Canton v. Harris, 489 U.S. 378, 388-89 (1989)), cert. denied, 118 S.Ct. 2370 (1998).  To establish the municipality's deliberate indifference and the necessary causal link between its policy and a violation

12

of federal rights, a plaintiff must be able to show a program or policy for training or discipline applicable over time to many employees and a pattern of constitutional violations by the employees making the deficiency obvious, or possibly one constitutional violation accompanied by a demonstrated deficiency in training or discipline for handling "recurring situations presenting an obvious potential for such violation." Bryan County, 117 S. Ct. at 1390-91; see also Swain v. Spinney, 117 F.3d 1, 11 (1st Cir. 1997); Bowen v. City of Manchester, 966 F.2d 13, 17-18 (1st Cir. 1992).

The city contends that Mrs. Levesque cannot meet those exacting proof requirements.[10]  In response, Mrs. Levesque provides no appropriate record support for her allegations that Officer Weliber's actions were resulted from the city's failure to properly train and discipline him.  She has not included affidavits or other appropriate supporting materials to show a pattern of constitutional violations nor has she provided evidence in the record of the city's training program, or disciplinary record relevant to police officers.  Thus, she does not demonstrate a genuine factual dispute as to whether the city's training or discipline system over a period of time

_____

[10]Plaintiff says that she has other civil rights claims against the city not addressed in defendants' motion but does not explain what those claims might be.  Claims against the city for failure to train, sanction, and discipline (i.e. training and supervision) its police seem to be  alleged in her complaint, but she has not identified any other claims she believes she has brought against the city.  Consequently, she is limited to the claims apparent in her complaint.

13

resulted in violations of citizens' constitutional rights or that Weliber was not trained and that such a deficiency would so obviously result in a constitutional violation that the city knew or should have known of the problem. Plaintiff's lack of record support for her claim fails to meet her burden in opposing summary judgment.[11] Fed. R. Civ. P. 56(e); see, also, e.g., Hayden, 134 F.3d at 456; Swain, 117 F.3d at 11; Armstrong v. Lamy, 938 F. Supp. 1018, 1037 (D. Mass. 1996). Accordingly, Nashua is entitled to summary judgment on Mrs. Levesque's civil rights claim.

## C.   State Law Claims

Plaintiff also asserts state law claims against Officer Weliber and the city for assault and battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, invasion of privacy, negligence, gross negligence, and negligent hiring and supervision. Defendants move for judgment in their favor on several of the intentional tort claims on grounds that existence of probable cause to arrest Mrs. Levesque negates an element of each claim. Since Mrs. Levesque has demonstrated a genuine and material factual issue concerning Officer's Weliber's probable

---

[11]Although plaintiff suggests that she has had insufficient discovery to develop an evidentiary basis for her claim, she did not seek, nor did she submit an affidavit pursuant to Federal Rule of Civil Procedure 56(f), to support appropriate relief.

14

cause to arrest her, defendants of course cannot prevail in summary judgment on the grounds they advance.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment (document no. 12) is denied with respect to plaintiff's civil rights claims against Officer Weliber and state law claims against both defendants, but is granted with respect to plaintiff's civil rights claims against the City of Nashua.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 31, 1998

cc:  Sven D. Wiberg, Esq.
     Donald E. Gardner, Esq.