**Philip C. TOBIN, Plaintiff,**

v.

**UNIVERSITY OF MAINE SYSTEM, et al., Defendants.**

**No. Civ. 98–237–B.**

United States District Court,
D. Maine.

Aug. 13, 1999.

Philip C. Tobin, Ellsworth, Maine, for plaintiff pro se.

Paul W. Chaiken, Rudman & Winchell Bangor, Maine, for defendants.

**ORDER AND MEMORANDUM
OF DECISION**

BRODY, District Judge.

Plaintiff Philip C. Tobin ("Plaintiff"), proceeding pro se, claims that he was denied admission to the University of Maine School of Law based on his age. He has filed suit against the following Defendants: Chancellor of the University of Maine System Terrence MacTaggart ("MacTaggart"); Dean of the University of Maine School of Law Colleen Khoury ("Khoury"); and various members of the 1997 admissions committee, including Professor Delagu, Professor Cluchey, Professor Ward, and Assistant Dean Barbara Gauditz ("Admissions Committee"). Before the Court is Defendants' Motion for Summary Judgment on Counts II and VI of Plaintiff's Fourth Amended Complaint. For the reasons discussed below, Defendants' Motion for Summary Judgment as to Count II is GRANTED and Count VI is DISMISSED.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.P. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## I. BACKGROUND

In March of 1997, Plaintiff, who was 65 years of age at the time, submitted an application for admission to the class of 2000 of the University of Maine School of Law ("Law School"). He was not selected for admission. He was accepted at the University of Utah School of Law, though he declined to enroll due to family considerations.

In January of 1997, Plaintiff had been involved in a single-car accident in which he sustained a blunt force trauma to the head and severe scalp lacerations that required numerous cranial stitches. Following the accident, he experienced intermittent memory loss that continued regularly for about three months. On February 6, 1997, approximately one month before submitting his application, Plaintiff took the Law School Admissions Test ("LSAT"). According to Plaintiff, he guessed on one of the exam's four sections because he could not recall the symbolic notation system he had developed in preparation for that section. Plaintiff gave the Admissions Committee the emergency room and police reports related to his accident, but the Admissions Committee did not consider them in evaluating his LSAT score.

The Law School's admissions criteria were set forth in its 1996–97 school catalogue. They included consideration of several factors: the applicant's overall college and graduate performance, LSAT and other test scores, extracurricular activities, work experience, recommendations, and the nature and extent of any economic, cultural, physical, or social condition that the applicant has experienced and chooses to share with the Admissions Committee. There existed no express admissions classifications favoring applicants of one age over applicants of another age.

In evaluating Plaintiff's application, the Admissions Committee considered, among other things, information provided to it by the Law School Data Assembly Service ("LSDAS"). LSDAS reported that Plaintiff's average LSAT score[1] was 140 and that his undergraduate grade point average ("GPA") was 2.79. This latter figure reflected Plaintiff's GPA upon graduation from the University of Maine, Orono, in 1959 with a B.A. in English.[2] When calculating an applicant's GPA, LSDAS does not include grades achieved in "[u]ndergraduate courses taken after the first four-year degree is awarded." (Pl.'s Ex. 4.)

---

1. An applicant has an "average LSAT score" if he or she took the exam on more than one occasion and the scores from those exams have been averaged.

2. Plaintiff appears to contest the accuracy of this figure, though he does not dispute that this was the number communicated to the Law School by LSDAS. He explains that when he graduated from the University of Maine, Orono, his GPA was 2.80. (Pl.'s Ex. 3.) Apparently, during the summer of 1965, he enrolled in two post-baccalaureate College of Education courses "the quality-point ratio of which reduced [his GPA] to 2.79." (Tobin Aff. ¶ 4.)

At the time he applied to the Law School, Plaintiff was pursuing an Associate's degree in Legal Technology at University College, Bangor.[3] His GPA in that program at the time of his application was 3.62. Although the Admissions Committee had in its possession Plaintiff's University College transcript, it did not consider Plaintiff's GPA in that program when evaluating his application.

Of the 586 individuals who applied for admission to the Law School in 1997, 297 were accepted for admission. Ninety-seven of those admitted applicants matriculated into the class of 2000.[4] No student admitted to the class of 2000 had a lower average LSAT score than Plaintiff. One student admitted to the class of 2000 had the same average LSAT score as Plaintiff. This student had a GPA of 3.63. At least six of the 297 admitted applicants were over the age of 40. Each of these six students had either a higher GPA, a higher average LSAT score, or a higher GPA *and* a higher LSAT score, than Plaintiff.[5]

In the spring of 1997, Khoury was a Professor at the Law School. She did not serve on the Admissions Committee nor did she have any role in the admissions decisions relating to the class of 2000. She was appointed to the position of Dean of the Law School on July 1, 1998.

In Count II of his Fourth Amended Complaint,[6] Plaintiff alleges that Khoury

3. University College is an extension of the University of Maine, Augusta.

4. Through the Affidavit of Assistant Dean Barbara Gauditz, Defendants purport to offer statistics on the comparative characteristics of Plaintiff's fellow applicants. The Affidavit states that "I have compiled a list summarizing the GPA, average LSAT score, gender, residence, and high LSAT score of each person admitted to the class of the year 2000." (Gauditz Aff. at 2.) The attached list, however contains ninety-seven entries, as opposed to 297, indicating to the Court that it is *not* a summary of the characteristics of "each person admitted to the class of 2000," but rather a summary of the characteristics of *the admitted applicants who decided to matriculate.* While the ninety-seven matriculated students certainly constitute a valid subset of the group of admitted students, statistics solely relating to this subset are not meaningful in the context of this case. After all, Plaintiff's position is that he should have been one of the 297 admitted applicants. Therefore, although Plaintiff and Defendant both cite statistics solely concerning the ninety-seven matriculated students in their Statements of Material Facts, the Court only will consider statistics relating to the 297 admitted applicants.

5. The Court will not consider the numerous immaterial facts and conclusory allegations contained in Plaintiff's Statement of Material Facts, including, to name a few: (i) the fact that in years prior to 1997, the Law School admitted applicants whose LSAT scores were below 140, (ii) the fact that at least two admitted applicants had LSAT scores below 140 on their first sitting, even though their average LSAT scores exceeded 140, (iii) the fact that at least seven of the admitted applicants had average LSAT scores ranging from 142 to 144, and (iv) Plaintiff's unsupported assertion that his "true" GPA was 3.25.

6. Plaintiff's Complaint has been the subject of extensive amendment. Plaintiff filed his first Complaint on December 1, 1998, in which he named the University of Maine System, the University of Maine School of Law, and "The Unknown Members of the Law School Admissions Committee for the class of the year A.D.2000" as defendants. He amended the Complaint a first time on December 7, 1998, and filed a Second Amended Complaint on January 25, 1999. Plaintiff then filed two motions seeking to amend the Second Amended Complaint to clarify the identity of party defendants: he proposed to substitute Mac-Taggart for the University of Maine System, Khoury for the University of Maine School of Law, and Cluchey, Delogu, Ward, and Gauditz for "The Unknown Members of the Law School Admissions Committee for the class of the year A.D.2000." These two motions were consolidated and granted on March 23, 1999, and Plaintiff's Third Amended Complaint was filed that same day. Finally, on August 11, 1999, the Court granted, for purposes of summary judgment only, Plaintiff's Motion to Amend the Complaint a fourth time, so that he might clarify that both Khoury and the Admissions Committee are defendants to Count II. This last ruling mooted Plaintiff's unorthodox July 15, 1999 Objection to Order # 28 and Order # 42.

The case is now in its second phase. On July 1, 1999, the Court dismissed Counts I (substantive due process), III (substantive due process), IV (intentional or reckless infliction of emotional distress), and V (breach of an

and the Admissions Committee violated the Equal Protection Clause by discriminating against him based on his age. He seeks "presumed and punitive damages" for this alleged violation of 42 U.S.C. § 1983 ("Section 1983") in an amount to exceed $150,000.00.

In Count VI of his Fourth Amended Complaint, Plaintiff asserts that MacTaggart violated the Age Discrimination Act of 1975, 42 U.S.C. §§ 6101–07. Plaintiff has since indicated, however, that he wishes to withdraw this claim. (Pl.'s Resp. Def.'s Mot.Summ.J. at 10.) As a result, the Court dismisses Count VI. The sole issue remaining for the Court is whether a genuine issue of material fact exists as to the equal protection claim.

## III. DISCUSSION

■ In order to state a claim under Section 1983, the plaintiff must establish that a state actor has deprived him of rights secured by federal constitutional or statutory law. *See Izquierdo Prieto v. Mercado Rosa*, 894 F.2d 467, 470 (1st Cir. 1990). In this case, Plaintiff asserts that his Fourteenth Amendment right to equal protection has been violated. Under the Fourteenth Amendment, no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

■ The First Circuit has recently reiterated that courts evaluating equal protection claims must first determine whether there exists evidence of discriminatory intent. *See Hayden v. Grayson*, 134 F.3d 449, 452–53 (1st Cir.1998), *cert. denied*, — U.S. —, 118 S.Ct. 2370, 141 L.Ed.2d 738 (1998). Only once discriminatory intent has been established may the Court turn to the standard under which the action in question is to be reviewed (i.e., rational basis review, intermediate scrutiny, or strict scrutiny). *See Hayden*, 134 F.3d at

452–53. The burden to prove intentional discrimination is not a slight one: " 'Discriminatory purpose' . . . implies that the decisionmaker . . . selected or reaffirmed a course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)).

■ In light of this intent requirement, an equal protection challenge to a law or policy may proceed under one of several theories. First, a law, policy, or action may be discriminatory on its face. *See United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). Second, a law, policy, or action, neutral on its face, may be applied such that it discriminates against a certain group. *See Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Finally, a law, policy, or action, neutral on its face and in its application, may have been promulgated with discriminatory intent. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 267, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). In this last instance, although evidence of a disparate impact may serve as evidence of discriminatory intent, it rarely will carry the day in the absence of other evidence of discriminatory design. The First Circuit has noted that "evidence of a widely disproportionate impact on the plaintiff class normally is not enough, standing alone, to establish an equal protection violation. . . . Rather, [the plaintiff] must adduce competent evidence of 'purposeful discrimination.' " *Hayden*, 134 F.3d at 453 (citations omitted).

Plaintiff does not attempt to pursue either of the first two theories outlined above. He cannot point to any policy on the part of Defendants that facially dis-

implied covenant of good faith and fair dealing). With respect to this Motion for Summary Judgment, on August 11, 1999, the Court granted Defendants' Motion to Strike

Plaintiff's Response to Defendants' Reply. Such a submission is not authorized under Local Rule 7.

criminates against older persons. Nor can he argue that the Admissions Committee has applied one of its policies in a discriminatory manner. There is no evidence, for example, that the Admissions Committee ignored Plaintiff's University College GPA while simultaneously taking into account another younger applicant's post-baccalaureate grades.[7]

Thus, Plaintiff is left with the third and final theory: that the Admissions Committee was motivated by discriminatory intent when it rejected his application. The absence of evidence of discriminatory intent is fatal to Plaintiff's claim, however, and the Court need not engage in any rational basis review.[8]

Plaintiff argues that three indicators of discriminatory intent are present in this case. First, he claims that the Law School's deference to LSDAS's GPA calculation practices has a disproportionate adverse impact on older individuals who have returned to school in an effort to buttress their academic credibility in anticipation of applying to law school.[9] Despite this sweeping assertion, Plaintiff has produced no evidence that this practice has affected anyone other than himself. The rejection of Plaintiff's application to law school hardly constitutes evidence of a disparate impact on the group identified by Plaintiff, or any other group, for that matter.

Second, Plaintiff contends that discrimination may be inferred because "age was his only distinguishing feature, Plaintiff being a white, blue-eyed, Viking–Irish, American male." (Pl.'s Resp. Defs.' Mot.

Summ.J. at 6.) The law is exceptionally clear that such an argument does nothing to advance an equal protection discrimination claim. *See Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir.1992) ("A plaintiff may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus.") (quotations omitted).

Finally, Plaintiff argues simply that the Admissions Committee's application of a subjective standard to the evaluation of his average LSAT score evidences a discriminatory intent. The only evidence in the record on this issue is that the Admissions Committee considers an applicant's average LSAT score in addition to a number of other factors when evaluating applications. This fact simply does not permit a reasonable inference that the admissions process is discriminatory in any way. *See Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir. 1998) (plaintiff must " 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a . . . motion for . . . summary judgment."); *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir.1994) (summary judgment appropriate " '[e]ven in cases where elusive concepts such as motive or intent are at issue . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' ") (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993)).

---

7. Plaintiff suggests that by identifying his GPA as the 2.79 GPA reported by LSDAS, as opposed to factoring in his 3.62 GPA in the University College Legal Technology program, the Admissions Committee violated its own written representation that it would consider an applicant's "overall college and graduate performance." This bare assertion-in reality Plaintiff's subjective opinion as to what considerations are relevant to an applicant's qualifications for law school-has no bearing on whether Defendants' actions had the result of treating similarly situated persons dissimilarly.

8. Age-related classifications are subject to rational basis review, as opposed to intermediate or strict scrutiny. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312–13, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

9. Logically incorporated into this position is Plaintiff's argument that Defendants were motivated by discriminatory intent because they knew that LSDAS does not include post-baccalaureate grades in its GPA calculations and still proceeded to adopt the LSDAS GPA anyway.

In light of the Court's determination that Plaintiff has failed to raise a genuine issue of fact as to Defendants' motivation, the Court need not address Defendants' arguments relating to rational basis review and qualified immunity.     ·

## IV. CONCLUSION

In the end, what Plaintiff asserts to be "evidence" actually constitutes nothing more than unsupported and conclusory allegations about the decision to reject his application. For the reasons outlined above, Defendant's Motion for Summary Judgment is GRANTED as to Count II, and Count VI is DISMISSED.

*SO ORDERED.*